UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVID CHRISTOPHER SIKLAS,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 3:23-CV-246 JD

## OPINION AND ORDER

    Plaintiff David Siklas appeals the denial of his claim for continued Supplemental Security Income Benefits. Mr. Siklas makes two principal contentions: he argues that the ALJ committed reversible errors by failing to find that his severe mental impairments equaled impairments listed in the regulations and that the ALJ's residual functional capacity finding was incomplete. For the reasons below, the Court finds that a remand is necessary because the ALJ omitted from her residual functional capacity determination Mr. Siklas's moderate limitation on his ability to persist at work.

**A. Relevant Medical Evidence and ALJ's Finding**

    Mr. Siklas is twenty-three years old. As a child, he received supplemental security income benefits after being adjudged disabled at age seven because of autism, attention deficit disorder, and attention deficit hyperactivity disorder. (R. at 62.) When he turned eighteen, his eligibility for benefits was considered again, but this time he was found to be not disabled as of March 16, 2020. He requested that the determination be reconsidered but a disability hearing officer upheld the initial decision. Mr. Siklas then requested a hearing before an Administrative

Law Judge ("ALJ"). The ALJ likewise found that Mr. Siklas was no longer disabled. The Agency's Appeal Council denied Ms. Siklas's request for review, making the ALJ's decision the final decision of the Commissioner.

In conducting the sequential analysis to determine whether Mr. Siklas was disabled, the ALJ found at step two that Mr. Siklas suffered from two severe mental impairments: Asperger spectrum disorder and attention deficit hyperactivity disorder ("ADHD"). (R. at 36.) The ALJ did not assess any non-severe medical impairments.

At step three, the ALJ found that Mr. Siklas has no impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. (R. at 13–14.) In particular, the ALJ considered Mr. Siklas's impairments in relation to listings 12.10 (autism spectrum disorder) and 12.11 (neurodevelopmental disorders). Both listings include the so-called "paragraph B" criteria under which a listing can be satisfied if the mental impairment results in at least one extreme or two marked limitations in these areas of mental functioning:

1. Understand, remember, or apply information
2. Interact with others
3. Concentrate, persist, or maintain pace
4. Adapt or manage oneself.[1]

20 C.F.R Part 404, Subpart P, Appendix 1 §§ 12.10 & 12.11.

---

[1] A person with an extreme limitation is "not able to function in [the defined area] independently, appropriately, effectively, and on a sustained basis." 20 C.F.R Part 404, Subpart P, Appendix 1 § 12.00(F)(2)(e). A person suffers from a marked limitation if his mental "functioning . . . independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id*. § 12.00(F)(2)(d).

2

The ALJ found that Mr. Siklas has only moderate limitations in each of these areas of mental functioning[2] and therefore does not have mental impairments that render him disabled under Appendix 1.

In considering Mr. Siklas's residual functional capacity ("RFC"), the ALJ found that, since March 16, 2020, Mr. Siklas has been able to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple, repetitive tasks/instructions while maintaining adequate attention and concentration; he is able to respond to brief supervision and occasional interaction with coworkers, supervisors, and the public; he requires work free of fast-paced production or quota—meaning no tandem work assignments, machine regulated work, or hourly production requirements; finally, Mr. Siklas can manage occasional changes in simple work settings. (R. at 14–15.)

In light of this RFC, the ALJ found that, since March 16, 2020, Mr. Siklas has been unable to perform any past relevant work, but that other jobs were available in significant numbers in the national economy. In particular, he could work as a linen room attendant, salvage laborer, or kitchen helper. The ALJ thus determined that Mr. Siklas was not disabled for the purposes of his request for a redetermination of his continuing eligibility for supplemental security income upon attaining age eighteen under section 1614(a)(3)(H) of the Social Security Act.

**B.      Standard of Review**

---

[2] A person has a moderate limitation if his mental "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." *Id*. § 12.00(F)(2)(d).

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**C.      Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;[3]
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses

---

[3] This step is not used for redetermining disability upon attaining age eighteen. *See* 20 C.F.R. § 416.987(b) ("We will not use the rule in § 416.920(b) for people who are doing substantial gainful activity . . . .")

5

the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D.**     **Discussion**

On appeal, Mr. Siklas insists that his mental health impairments satisfy "paragraph B" criteria under listings 12.10 and 12.11 rendering him disabled at step three of the sequential analysis. Mr. Siklas's overarching argument is that the ALJ considered only the medical evidence and failed to consider his own statements, as well as those of his mother and teacher, which contradict the ALJ's opinion. Mr. Siklas also contends that the ALJ did not explain how the evidence supports her conclusion that he can maintain adequate attention and concentration for simple, repetitive tasks not involving fast-paced production requirements or quotas.

**(a)** *Appendix 1 Listings: §§ 12.10 and 12.11*

The Court will only briefly address Mr. Siklas's arguments that he met listings 12.10 and 12.11 because the case has to be remanded due to the ALJ's failure to present the Vocational Expert with a complete hypothetical. At step three of the sequential analysis, a claimant is deemed disabled if the ALJ determines that the claimant's impairment, or combination of impairments, meets or equals an impairment listed in the regulations. 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled."). The claimant "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing. But [the Seventh Circuit] has also held that an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Mental impairments are listed in § 12.00 of Appendix 1. Each disorder is defined by the presence of certain criteria in paragraphs A and B of the listing:

> When considering mental impairments, an ALJ must refer to Section 12.00 of the listed impairments in Appendix 1, which describes mental disorders. *See* Appendix 1, § 12.00(A). Each disorder contains a set of medical findings in paragraph A; these "A criteria" are used to substantiate the presence of a particular mental disorder. *Id*. Each disorder also contains a set of impairment-related functional limitations in paragraph B; these "B criteria" describe the impairment-related functional limitations that are incompatible with the ability to do any gainful activity. *Id*. Criteria from paragraphs A and B must be met for the claimant's impairment to meet the listed impairment.[4] *Id*.

*Beach v. Astrue*, No. 09-CV-2897, 2010 WL 3168292, at *9 (N.D. Ill. Aug. 4, 2010).

In evaluating disorders under Listing 12.00, the ALJ must consider evidence from medical sources, evidence from the claimant and the people who know him, longitudinal evidence, and evidence of functioning in unfamiliar situations or supportive situations. Appendix 1, § 12.00(C)(1)-(6). The ALJ must also consider psychosocial supports, structured settings, living arrangements, and treatment. *Id*. § 12.00(D). However, the regulations do not specify the

---

[4] "However, if a listed impairment also contains a paragraph C, which describes additional functional criteria, the claimant's impairment can still meet the listed impairment if paragraph C is met in lieu of paragraph B." *Beach*, 2010 WL 3168292, at *9 n.6.

7

exact articulation requirement when considering a specific listing,[5] and the courts in the Seventh Circuit do not require a mechanically rigid consideration of evidence related to a particular list to be discussed strictly in the context of the listing. *See Lloyd v. Berryhill*, 682 F. App'x 491, 496 (7th Cir. 2017) ("Thus [the ALJ's] later discussion supported her determination that Listing 1.02 was not met; she did not need to repeat herself when considering the listing. Moreover, because any discussion of Listing 1.03 would involve the same evidence and ultimate conclusion, the omission was harmless.") (citation omitted)); *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) ("Accordingly, when an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing. And, as we've already recognized, '[t]o require the ALJ to repeat such a discussion throughout [the] decision would be redundant.'") (quoting *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015)).

The Court notes two erroneous assumptions in Mr. Siklas's argument that his impairments meet a listing. First, Mr. Siklas argues that he meets paragraph C criteria which renders him disabled. This argument can be disposed of without difficulty. The ALJ considered the relevant Listings by name: §§ 12.10 (autism spectrum disorder) and 12.11 (neurodevelopmental disorders). Mr. Siklas does not suggest that the ALJ should have considered other Listings, yet ignores the fact that Listings 12.10 and 12.11 do not have Paragraph C criteria. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (A)(2) ("Listings . . . 12.10, 12.11 . . .

---

[5] In the context of making a finding about medical equivalence, "[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Soc. Sec. Ruling 17-2p: Titles II & XVI: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med. Equivalence, SSR 17-2P (S.S.A. Mar. 27, 2017).

have two paragraphs, designated A and B; your mental disorder must satisfy the requirements of both paragraphs A and B."); *see also* §§ 12.10 and 12.11. Those criteria are found only in Listings 12.02, 12.03, 12.04, 12.06, and 12.15. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (A)(2) ("Listings 12.02, 12.03, 12.04, 12.06, and 12.15 have three paragraphs, designated A, B, and C . . . ."). Accordingly, Mr. Siklas's argument that he meets Paragraph C criteria is misplaced.[6]

Second, to satisfy either Listing 12.10 or 12.11, Mr. Siklas had to prove that he had an extreme limitation in one, or a marked limitation in two, of the Paragraph B criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself. 20 C.F.R. Part 404, Subpt. P, Appx. 1, §§ 12.10, 12.11. He has not done so, and the ALJ's finding that Mr. Siklas is suffering only moderate limitations in these areas is supported by substantial evidence. In reaching his conclusions, the ALJ considered evidence from the agency consultant, Mr. Siklas's medical treatment records, his own statements and those of his mother and teacher, as well as his employment at Walmart.

As required, the ALJ relied on the prior administrative findings from agency psychologist, Dr. James Gange, *see Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an

---

[6] In his Reply brief, Mr. Siklas insists that the ALJ should have considered Paragraph C criteria because, according to him, § 12.00(G)(1) states that "Paragraph C is merely an *alternative* to Paragraph B criteria" and "is used to evaluate mental disorders that are 'serious and persistent' like Plaintiff's here." (Rep. Br., DE 17 at 13 (quoting part of § 12.00(G)(1)).) But Mr. Siklas omits a crucial portion of subsection (G)(1). Here is the full text of the regulation upon which Mr. Siklas relies: "The paragraph C criteria are an alternative to the paragraph B criteria under listings 12.02, 12.03, 12.04, 12.06, and 12.15. We use the paragraph C criteria to evaluate mental disorders that are 'serious and persistent.'" § 12.00(G)(1) (emphasis added). Mr. Siklas cuts out the underlined text, which is detrimental to his argument because the plain language of subsection (G)(1) limits the application of Paragraph C criteria to §§ 12.02, 12.03, 12.04, 12.06, and 12.15.
 One other thing. Dr. Gange checked off a box that states: "Evidence does not establish the presence of the 'C Criteria.'" (*See* R. at 624.) Mr. Siklas extrapolates from this that the ALJ should have considered Paragraph C criteria. While the form itself suggests that Dr. Gange should have left this section blank ("Complete this section, if applicable, for 12.02, 12.03, 12.04 12.06, or 12.15"), Mr. Siklas has not explained why the ALJ should have upset the regulatory framework because an agency psychologist might have misunderstood how to fill out this section.

9

expert's opinion on the issue."), who determined after reviewing Mr. Siklas's records and Dr. Wax's 2020 psychological consultative examination, that he had mild limitations in understanding, remembering, or applying information, and moderate limitations in other Paragraph B criteria. (R. at 18 (citing Exhs. 19F & 20F, R. at 623).) Mr. Siklas singles out Dr. Gange's finding that he has a "moderate limitation to sustain an ordinary routine without special supervision," but the Court fails to understand the significance of this argument since this conclusion is consistent with the ALJ's findings that his Paragraph B criteria were moderately limited. Moreover, as the Commissioner rightly points out, no medical source opinion indicated greater than moderate limitations in any Paragraph B criteria.

The ALJ also considered Dr. Wax's psychological evaluation of Mr. Siklas. Dr. Wax's evaluation is consistent with the medical notes from Mr. Siklas's family physicians in 2020. (*See* June 15, 2020, Visit; R. at 585 ("Feels like his medication does still keep him focused just fine."); R. at 586 ("ADHD - Stable on current meds, will continue."); September 15, 2020, Visit; R. at 591 ("Pt is here for follow up on ADHD. He's taking his Adderall without any problems. . . . Feels like the meds are still helping him to focus. Not really having a lot of emotional crashes when they wear off.").) And while Mr. Siklas observes that at one of the visits he complained of medication wearing off sooner than normal, the doctor's note shows that his dosage was increased to address the problem, and Mr. Siklas has not pointed to any subsequent visit showing that the issue remained unresolved.

While Mr. Siklas would like his teacher's, his mother's, and his own subjective statements to override the medical evidence in the ALJ's consideration whether his impairments meet a listing, the ALJ must consider all evidence and weigh it on the basis of the record as a whole. The ALJ considered the teacher's evaluation and gave two reasons for finding it not

persuasive. (R. at 18.) First, the ALJ noted that the teacher's questionnaire indicating serious problems acquiring and using information as well as attending and completing tasks addressed Plaintiff's functioning when he was a junior in high school, not when he was an adult.[7] (R. at 18 (citing Exh. 4E; R. at 237–58).) While there's some relevance to the teacher's evaluation, it was not patently wrong for the ALJ to discount it in light of changed circumstances, namely, Mr. Siklas's demonstrated ability to work at Walmart as an adult. Moreover, the ALJ found it significant that Mr. Siklas "has held a job at Walmart since this time, and although he was terminated, it was not for his inability to complete the tasks asked of him or because he was unable to understand what he needed to do." (R. at 18.)

Next, in assessing Mr. Siklas's allegations, the ALJ specifically noted Mr. Siklas's and his mother's statements about his mental health, daily activities, self-care, school, relationships, and so on. (*See e.g.*, R. at 14 ("His mother mentioned the claimant does not exactly do laundry and he rarely cooks." "His mother . . . testified and stated the claimant does a poor job at his chores, if he does them."); R. at 15 (ALJ recounting Mr. Siklas's testimony about his work at Walmart); R. at 16 (ALJ recounting Mr. Siklas's testimony about his household chores, need for reminders for personal care, drawing and watching videos for fun and to calm himself, his girlfriend, and anxiety medication); R. at 16 (ALJ recounting his mother's testimony about him doing a poor job at his chores, lacking mental maturity at work, being awkward and having trouble focusing).)` The ALJ also reviewed Function Reports completed by Mr. Siklas and his mother. (R. at 16 (citing Exhs. 10E & 7E).) The ALJ contrasted Mr. Siklas's medical record with his claimed deficiencies, noting, for example, that shortly before the alleged onset date, he saw a medical provider at St. Joseph Family Medicine but reported no particular concerns about his

---

[7] Mr. Siklas's teacher filled out the evaluation on February 27, 2020. (R. at 244.)

11

mental health: "He was taking Adderall for ADHD. It was reported that he did fine at school so long as he was interested in the class. He reported having friends. His examination was normal, he interacted appropriately, his affect was appropriate and his eye contact was intact." (R. at 16 (citing Exh. 9F at 4).) During the psychological consultative examination on February 17, 2020, he appeared to be on a spectrum and he was functioning on a much lower level than his age, but his cognitive functioning was in the average range. (R. at 16–17 (citing Exh. 14F).) The ALJ also observed that at a December 15, 2020, visit, he reported that his medications were working and he was able to focus, and his diagnoses of ADHD and Autism were stable, as well as that his overall examination was normal. (R. at 17 (citing Exh. 21F at 4).) A year later, on March 16, 2021, while he struggled with e-learning and his grades were slipping, his medications were still helping him focus and that was not an issue. (R. at 17 (citing Exh. 21F at 2).) Similarly, the ALJ reviewed Dr. Wax's reports and Dr. Gange's opinions in determining less severe limitations than those alleged by Mr. Siklas, his mother, and the teacher. Since the Court is prohibited from reweighing the evidence, it has no power to disturb the ALJ's finding that Mr. Siklas's medical impairments did not equal Listings 12.10 or 12.11. *See Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) ("We do not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner. And we will reverse only if the record compels a contrary result." (quotation marks and citation omitted).). Nor is the ALJ's opinion so devoid of any discussion as to how she arrived at the listing determination that the proverbial bridge from the evidence to her conclusion is missing. *See Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) ("When an ALJ recommends that the agency deny benefits, it must first 'build an accurate and logical bridge from the evidence to the conclusion.' In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained

12

in the record and must explain why contrary evidence does not persuade.") (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). This is particularly true given the lack of any medical source opinion finding greater limitations than assessed by the ALJ. Relying on the objective medical evidence and Mr. Siklas's subjective reports, the ALJ sufficiently considered his mental limitations in finding that he did not meet a listing.

### (b) *Stated Limitations in Mr. Siklas's RFC*

The ALJ defined Mr. Siklas's RFC as follows:

> Since March 16, 2020, Mr. Siklas has been able to perform a full range of work at all exertional levels but with the following nonexertional limitations: Mr. Siklas can understand, remember, and carry out simple, repetitive tasks/instructions; can maintain adequate attention and concentration for said tasks/instructions; able to respond to brief supervision and occasional interaction with coworkers, supervisors, and the general public; requires work free of fast-paced production or quota meaning no tandem work assignments, machine regulated work, or hourly production requirements; and can manage occasional changes in simple work setting.[8]

(R. at 14–15.)

Mr. Siklas argues that the ALJ did not explain how she concluded that Mr. Siklas can maintain adequate attention and concentration for jobs that do not involve fast-paced production or quotas, requiring a reversal of her opinion. Mr. Siklas states that the ALJ accounted for concentration and pace, but not for persistence even though all three competencies are required for competitive employment. (Pl.'s Br., DE 13 at 20 (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i) ("Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from

---

[8] The ALJ's controlling hypothetical presented to the Vocational Expert ("VE") contained the same limitations as expressed in the RFC.

completing a work-related task."). He further argues that, at best, the ALJ attempted to add this limitation by restricting Mr. Siklas to "simple, repetitive tasks," which is not allowed in the Seventh Circuit because such a restriction says nothing about the claimant's ability to perform work.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id*. "Although it is not necessary that the ALJ use this precise terminology ('concentration, persistence, and pace'), we will not assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Id.* Also, where, as here, the ALJ poses a series of increasingly restrictive hypotheticals to the VE, the Court presumes that the ALJ is not familiar with the claimants medical record "because in such cases we infer that the VE's attention is focused on the hypotheticals and not on the record." *O'Connor-Spinner*, 627 F.3d 614, 619 (7th Cir. 2010). In any case, there is no evidence here that the VE reviewed Mr. Siklas's medical history so that she could limit relevant work despite any gaps in the hypothetical. Therefore, the ALJ should have stated an adequate hypothetical to the VE and, and correspondingly, an adequate RFC that justifies her ultimate conclusion that there are jobs in significant numbers in the national economy that Mr. Siklas can perform. In particular, the hypothetical and the RFC[9] should include the limitations identified by Dr. Gange who filled out the Mental Residual Functional Capacity Assessment ("MRFCA")[10] and upon

---

[9] For the sake of simplicity, the Court will refer only to the RFC, but since the RFC and the controlling hypothetical contain the same limitations, any conclusion applicable to the RFC also applies to the hypothetical.

[10] According to the Program Operations Manual System, MRFCA is a special form used for mental disorder evaluations: "Because of the complexity of mental disorder evaluation, a special Form SSA-4734-F4-SUP is to be used to document the mental residual functional capacity (RFC) decision, i.e., what an individual can do

14

whose opinions the ALJ relied substantially (*see* R. at 18 (finding Dr. Gange's opinions "generally persuasive"). *See Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) ("Thus, we would expect an adequate hypothetical to include the limitations identified by [the state agency's psychological consultant].")

As relevant to Mr. Siklas's argument, there is evidence that Mr. Siklas suffered moderate limitations in the areas of concentration, persistence, and pace. As explained above, Dr. Gange found such limitations when he filled out the Psychiatric Review Technique form (R. at 623), and the ALJ made the same finding when considering whether Mr. Siklas's severe impairments equaled the listings in Appendix 1. (R. at 13 ("With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation.").) In turn, the RFC references concentration ("[Mr. Siklas] can maintain adequate attention/concentration for said tasks/instructions") and pace ("[Mr. Siklas] requires work free of fast-paced production or quota meaning no tandem work assignments, machine regulated work or hourly production requirements"). However, the RFC says nothing about persistence, which is different from concentration and pace. Persistence is "power or capacity of continuing in a course in the face of difficulties." Webster's Third New International Dictionary, Springfield, MA (1981). Concentration is "directing of the attention or of the mental faculties toward a single object." *Id*. Finally, pace is "rate of performance or delivery. *Id.* Given the different meanings of the terms, it cannot be said that the ALJ included persistence when she accounted for concentration and pace.

The Commissioner tries to excuse the ALJ's omission of persistence from the RFC with a twofold argument. First, the Commissioner asserts that the ALJ's decision to include a pace limitation, even though no medical source so limited Mr. Siklas, makes her RFC "reasonable."

---

despite his /her impairment." *See* DI 24510.060 Mental Residual Functional Capacity Assessment, https://secure.ssa.gov/poms.nsf/lnx/0424510060 (last visited March 11, 2024).

(Rep. Br., DE 16 at 17–18.) Second, the Commissioner is under the impression that Dr. Gange incorporated the moderate limitations related to concentration and persistence into his narrative regarding summary conclusions which carried over to the RFC because the ALJ relied on those conclusions.

The Commissioner's first argument does not address the requirement that all three areas of mental functioning—concentration, persistence, and pace—must be accounted for in the RFC. The Court must assume that, in limiting Mr. Siklas's pace requirements, the ALJ did what the evidence dictated her to do. Although no medical source imposed such a limitation, medical evidence is not the only evidence the ALJ must consider. It follows then that the ALJ must have incorporated this limitation on the basis of subjective statements about Mr. Siklas's ability to work. This inclusion should not be construed as "padding" Mr. Siklas's limitations where none existed, as if that would reduce the ALJ's obligation to account for other limitations, including persistence.

The Commissioner's second argument is just as unpersuasive. The Seventh Circuit makes few exceptions for the requirement that all the claimant's limitations be included in the RFC so that the VE can base her consideration about the available jobs on the basis of what the claimant can and can't do. Such cases do exist but their reach is very narrow. For example, the Seventh Circuit has allowed the RFC to stand "when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *O'Connor-Spinner*, 627 F.3d at 619 (citing *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007); and *Sims v. Barnhart*, 309 F.3d 424, 427, 431–32 (7th Cir. 2002)). Similarly, the court allowed RFCs where, "although the limitations on concentration, persistence and pace were not mentioned in the hypothetical, the underlying conditions were." *Id*. at 620

(citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)). But none of these scenarios apply here given that nothing in the RFC can be read as a substitute for persistence.

When the RFC is dissected, it's clear that the limitation on persistence is nowhere to be found. The RFC allows for "a full range of work at all exertional levels" with certain limitations. The first limitation contemplates unskilled work: "the claimant can understand, remember, and carry out simple, repetitive tasks/instructions."[11] But "[i]n most cases . . . employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Id.* at 620. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *Id*. Next follows "attention/concentration for said tasks/instructions." A limitation for pace is also included: "[Mr. Siklas] requires work free of fast paced production . . . ." What's left are the limitations on Mr. Siklas being "able to respond to brief supervision and occasional interaction with coworkers," and the fact that Mr. Siklas "can manage occasional changes in simple work settings." But neither set of conditions covers persistence. *See Varga*, 794 F.3d at 815 (the term "'[f]ew if any workplace changes' with limited 'interaction with coworkers or supervisors' deals largely with workplace adaptation, rather than concentration, pace, or persistence").

The Commissioner recognizes that none of the moderate limitations concerning persistence as identified by Dr. Gange were included in the RFC. For example, Dr. Gange found that Mr. Siklas had moderate limitations in his ability to "carry[] out detailed instructions, maintain[] attention and concentration for extended periods, and sustain[] a routine without

---

[11] The terms "simple, routine, and repetitive tasks" "refer to 'unskilled work,' which the regulations define as work that can be learned by demonstration in less than 30 days." *Varga*, 794 F.3d at 814 (citing 20 C.F.R. §§ 404.1568, 404.1520).

17

special supervision." (MRFCA, R. at 626.) However, none of these limitations are included in the RFC. The Commissioner argues that this doesn't matter because Dr. Gange opined in the summary report that Mr. Siklas could function adequately in these areas if limited to simple, repetitive tasks with only brief supervisory and social interaction. This is what he said:

> The totality of the evidence in file suggests that the claimant is able to: understand, carry out and remember simple instructions, able to make judgments commensurate with functions of simple, repetitive tasks, able to respond appropriately to brief supervision and interactions with coworkers and work situations, able to deal with changes in a routine work setting.

(R. at 628.)  But this statement suffers from the same shortcomings as the RFC. In fact, Dr. Gange's statement is the genesis of the ALJ's error. Despite his finding that Mr. Siklas has a moderate limitation to "sustain[] a routine without special supervision," his summary report states that Mr. Siklas is in fact "able to deal with changes in a routine work setting" without further limitations. At best, Dr. Gange's statement is vague and at worst contradictory with his own findings, so it cannot be said that the ALJ's silence on persistence is incorporated in Dr. Gange's summary. In addition, nothing sheds light on the question of persistence in the rest of Dr. Gange's summary, which accounts only for Mr. Siklas's ability to understand and make judgments commensurate with unskilled work and his ability to respond to brief supervision and interaction with coworkers.

To conclude, since the ALJ did not include either in the RFC or in the hypothetical to the VE the moderate limitations regarding Mr. Siklas's ability to persist in a job, the Court finds that the ALJ committed a reversible error. *See Varga*, 794 F.3d at 814 ("[W]e have repeatedly rejected the notion that a hypothetical like the one here 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'") (quoting *Yurt*, 758 F.3d at 858–59).

Without a complete hypothetical, there is no assurance that the VE fully understood Mr. Siklas's limitations so as to provide correct information about the jobs he can do that are available in significant numbers in the national economy. On remand, "the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."[12] *O'Connor-Spinner*, 627 F.3d at 620.

### C. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 15, 2024

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[12] The parties don't discuss this, but the statement that Mr. Siklas "can maintain *adequate* attention/concentration for said tasks/instructions" (emphasis added) appears to be contradicted by the ALJ's finding that Mr. Siklas has moderate limitations in concentration. In addition, although not relating to the area of persistence, the ALJ did not address Dr. Gange's finding that Mr. Siklas has a moderate limitation in "[t]he ability to set realistic goals or make plans independently of others." These things should be clarified on remand.